J-A06029-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| WALNUT STREET 2014-1 ISSUER, LLC, BY AND THROUGH THE BANCORP BANK, ITS SERVICER AND AGENT, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL S. PEARLSTEIN, | |
| Appellant | No. 2557 EDA 2016 |

Appeal from the Order Entered July 7, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): March Term, 2016 No. 01672

BEFORE:  PANELLA, SHOGAN, and RANSOM, JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED JUNE 22, 2017**

Appellant Michael Pearlstein ("Pearlstein") appeals from the order denying his petition to open the confessed judgment obtained by Walnut Street 2014-1 Issuer, LLC ("Walnut"), through its predecessor-in-interest and agent The Bancorp Bank ("the Bank").  We affirm.

Pearlstein is the sole member of the General Partnership of Empire Schuylkill, L.P. ("Empire"), which owns a shopping mall in Frackville, PA ("the Property").  On May 5, 2007, Empire and the Bank entered into a series of transactions to finance the purchase, maintenance, and operation of the Property ("Original Loan Agreement").  Pursuant to the Original Loan Agreement, Empire borrowed $27,200,000 from the Bank.  The parties entered additional transactions in 2009 and 2010.

In late 2010, Empire was prepared to sell the Property. To retain the Property as collateral for its loans to Empire, the Bank sought and obtained a guaranty from the United States Department of Agriculture ("USDA"). In submitting its application for the USDA guaranty, the Bank valued the Property at $30,372,821, despite a recent appraisal of $15,150,000 by Quinn & Associates. The USDA accepted the Bank's application and issued a guaranty ("USDA guaranty").

Empire and the Bank modified the Original Loan Agreement in February of 2011 ("Amended Loan Agreement"), at which time Pearlstein signed a personal guaranty agreement with the Bank ("Personal Guaranty"). The Personal Guaranty covered three notes: Amended and Restated Note for $17,300,000, which was reduced to $5,000,000; Term Note A for $5,862,789; and Term Note B for $4,093,211 ("Notes").

As of January 21, 2015, the Property had lost several anchor tenants, and Empire had obtained an appraisal that valued the Property at $5,300,000. Subsequently, Empire lost more tenants, and the fair market value of the Property dropped to an estimated $2,000,000. The Bank did not notify the USDA of Empire's declining financial state.

The Bank sold the Amended Loan Agreement, Notes, and Personal Guaranty to Walnut on or about December 30, 2014. Prior to this sale, the Bank had not previously enforced Empire's non-payment defaults of Current Ratio, Minimum Tangible Net Worth, and Debt to Equity. Nonetheless,

pursuant to a warrant of attorney provision in the Amended Loan Agreement, Walnut confessed judgment against Empire on January 20, 2016, for the non-payment defaults. Empire did not challenge the confessed judgment.

On March 17, 2016, Walnut confessed judgment against Pearlstein on the Personal Guaranty. Pearlstein filed a petition to open judgment ("Petition to Open") on May 16, 2016, raising defenses of fraudulent inducement, non-occurrence of default, waiver/estoppel, and breach of contract.[1] Walnut filed an answer on June 27, 2016 ("Answer"). The trial court denied the Petition to Open on July 7, 2016, finding that Pearlstein did not raise any meritorious defenses. The trial court also denied Appellant's July 15, 2016 motion for reconsideration on August 2, 2016. This appeal followed. The trial court did not direct Pearlstein to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). For purposes of complying with Pa.R.A.P. 1925(a), the trial court relied on its memoranda in support of the orders denying the Petition to Open and denying reconsideration. Order and Memorandum Opinion, 7/7/16; Memorandum Opinion, 8/1/16.

---

[1] Walnut submits—and we agree—that Pearlstein has not appealed the trial court's rejection of several other defenses, *i.e.*, Walnut's lack of standing to confess judgment against Pearlstein, the Bank's breach of the Amended Loan Agreement, the Bank's breach of its duty of good faith and fair dealing, and Walnut's breach of the warrant of attorney. Walnut's Brief at 15 n.4.

On appeal, Pearlstein raises the following issues for our consideration:

> 1. Did the trial court err by prematurely requiring evidence of the defenses without the issuance of a rule to show cause, the opportunity to take discovery and the opportunity to present evidence in support of the defenses, especially where the trial court found that Pearlstein alleged some legally valid defenses?
>
> 2. Did the trial court err in denying the Petition before allowing discovery and the opportunity to present evidence where Pearlstein alleged in a verified Petition all of the factual elements necessary to establish the meritorious defense of fraudulent inducement, to which the parol evidence rule does not apply?
>
> 3. Did the trial court err by denying the Petition before allowing discovery and the opportunity to present evidence where Pearlstein alleged in a verified Petition all of the factual elements necessary to establish the meritorious defenses of the non-occurrence of an alleged default and waiver and/or estoppel of the alleged defaults, which defenses are not vitiated by the non-waiver provision in the parties' agreement?
>
> 4. Did the trial court err by denying the Petition before allowing discovery and the opportunity to present evidence where Pearlstein alleged in a verified Petition all of the factual elements necessary to establish the meritorious defense of breach of contract, which Pearlstein had standing to raise as a party to the agreements and based on his role as guarantor for other agreements?

Pearlstein's Brief at 4.

"A petition to open a confessed judgment is an appeal to the trial court's equitable powers." ***Crum v. F.L. Shaffer Co.***, 693 A.2d 984, 986 (Pa. Super. 1997).

> It is committed to the sound discretion of the hearing court and will not be disturbed absent a manifest abuse of that discretion. Ordinarily, if a petition to open a judgment is to be successful, it must meet the following test: (1) the petition to open must be

promptly filed; (2) the failure to appear or file a timely answer must be excused; and (3) the party seeking to open the judgment must show a meritorious defense....

*Century Surety Co. v. Essington Auto Center, LLC*, 140 A.3d 46, 53 (Pa. Super. 2016) (quoting *Mother's Restaurant, Inc. v. Krystkiewicz*, 861 A.2d 327, 336 (Pa. Super. 2004) (*en banc*)); *Neducsin v. Caplan*, 121 A.3d 498, 505 (Pa. Super. 2015), *appeal denied*, 131 A.3d 492 (Pa. 2016). "Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason." *Neducsin*, 121 A.3d at 506 (quoting *Miller v. Sacred Heart Hosp.*, 753 A.2d 829, 832 (Pa. Super. 2000) (internal citations omitted)).

In adjudicating a petition to open a confessed judgment, the trial court is charged with "determining whether the petitioner presented sufficient evidence of a meritorious defense to require submission of that issue to a jury." *Ferrick v. Bianchini*, 69 A.3d 642, 647 (Pa. Super. 2013) (citing *Homart Development Co. v. Sgrenci*, 662 A.2d 1092 (1995)). "When determining a petition to open a judgment, matters *dehors* the record filed by the party in whose favor the warrant is given, *i.e.*, testimony, depositions, admissions, and other evidence, may be considered by the court." *Graystone Bank v. Grove Estates, LP*, 58 A.3d 1277, 1282 (Pa. Super. 2012).

Because the Petition to Open was timely, no one challenges the first two requirements for opening a confessed judgment; rather, Pearlstein focuses on the trial court's determination that the Petition to Open did not present any meritorious defenses warranting issuance of a rule to show cause. In his first issue, Pearlstein complains that the trial court disposed of the Petition to Open based solely on the initial pleadings without "affording" him the opportunity to develop any evidence in support of his defenses. Pearlstein's Brief at 17. Pearlstein asserts that the trial court propagated error by not following the procedure set forth in Pa.R.C.P. 2959(b) and (e). *Id.* According to Pearlstein, the averments in his Petition to Open should have triggered the trial court's action in issuing a rule and allowing discovery. Pearlstein's Brief at 21.

Pennsylvania Rule of Civil Procedure 2959 governs a petition to open a confessed judgment and provides, in relevant part, as follows:

> (a) Relief from a judgment by confession shall be sought by petition. . . . [A]ll grounds for relief whether to strike off the judgment or to open it must be asserted in a single petition. . . .
>
> (b) If the petition states prima facie grounds for relief the court shall issue a rule to show cause and may grant a stay of proceedings. After being served with a copy of the petition the plaintiff shall file an answer on or before the return day of the rule. The return day of the rule shall be fixed by the court by local rule or special order.
>
> * * *
>
> (e) The court shall dispose of the rule on petition and answer, and on any testimony, depositions, admissions and other evidence. The court for cause shown may stay proceedings on

- 6 -

the petition insofar as it seeks to open the judgment pending disposition of the application to strike off the judgment. If evidence is produced which in a jury trial would require the issues to be submitted to the jury the court shall open the judgment.

Pa.R.C.P. 2959(a), (b), and (e).  We have explained that:

> Pa.R.[C.]P. 2959(e) sets forth the standard by which a court determines whether a moving party has properly averred a meritorious defense.  If evidence is produced which in a jury trial would require the issues to be submitted to the jury the court shall open the judgment.  Furthermore, the court must view the evidence presented in the light most favorable to the moving party, while rejecting contrary evidence of the non-moving party.  The petitioner need not produce evidence proving that if the judgment is opened, the petitioner will prevail.  Moreover, we must accept as true the petitioner's evidence and all reasonable and proper inferences flowing therefrom.
>
> In other words, a judgment of confession will be opened if a petitioner seeking relief therefrom produces evidence which in a jury trial would require issues to be submitted to a jury.  The standard of sufficiency here is similar to the standard for a directed verdict, in that we must view the facts most favorably to the moving party, we must accept as true all the evidence and proper inferences in support of the defense raised, and we must reject all adverse allegations.

**Neducsin**, 121 A.3d at 506–507 (internal citations and quotation marks omitted).  Under this rule:

> a court can no longer weigh the evidence in support of the defense, but must only determine whether there is sufficient evidence to allow the issue to go to a jury.  The facts must be viewed in the light most favorable to the petitioner, and a court must accept as true all evidence and proper inferences therefrom supporting the defense and must reject the adverse allegations of the plaintiff.

**Van Arkel & Moss Properties, Inc. v. Kendor, Ltd.**, 419 A.2d 593, 596

(Pa. Super. 1980) (internal citations omitted).

- 7 -

Here, Walnut filed a complaint in confession of judgment, and judgment was entered. Pearlstein filed the Petition to Open. At that point, Pa.R.C.P. 2959(b) instructs the trial court to review the Petition to Open only and determine if it states *prima facie* grounds for relief. However, Walnut filed its Answer before the trial court made a finding. Then, based on the Petition to Open and the Answer, the trial court refused to open the judgment. Technically, therefore, Pearlstein's procedural challenge has merit. ***See City of Pittsburgh v. ACDI***, 488 A.2d 333, 334 (Pa. Super. 1985) ("[The] threshold requirement of subsection (b) must be met before the other procedures outlined in Rule 2959 are to take place."). Nevertheless, because we find support in the record for the trial court's finding that Pearlstein failed to present *prima facie* grounds for relief in the Petition to Open, we conclude that the technical violation of Pa.R.C.P. 2959(b) in this case does not warrant opening the judgment. Thus, Pearlstein's first issue does not merit relief.

In his remaining issues, Pearlstein argues the Petition to Open contains sufficient factual averments to support *prima facie* grounds for relief based on four defenses. In his second question presented, Pearlstein claims the Petition to Open establishes that the Bank fraudulently induced him to execute the Amended Loan Agreement based on its misrepresentations about obtaining the USDA guaranties. Pearlstein's Brief at 22. According to Pearlstein, the Bank made a representation to him which was material to the

transaction; the representation was made falsely, with knowledge of its falsity or reckless disregard as to its veracity, and with the intent of misleading Pearlstein into relying on it; Pearlstein relied on the misrepresentation and was proximately injured as a result. *Id.* (citing *Eigen v. Textron Lycoming Reciprocating Engine Div.*, 874 A.2d 1179, 1187 (Pa. Super. 2005)).

Also citing *Eigen*, the trial court disposed of Pearlstein's fraud-in-the-inducement defense as follows:

> In this case, Pearlstein has offered no evidence showing that the Bank, with an intent to mislead, falsely made a material representation upon which Empire relied, and that Empire suffered an injury proximately caused by such reliance. Pearlstein has offered none of the . . . elements which are required for submission to a jury, and for this reason his [fraudulent inducement] challenge to the confessed judgment is rejected.

Order and Memorandum Opinion, 7/7/16, at 6. Moreover, in denying Pearlstein's motion for consideration, the trial court observed that:

> various documents executed by Empire and Pearlstein were fully integrated contracts. Specifically, the Amended, Restated and Consolidating Loan Agreement executed by Pearlstein stated as follows:
>
> > **Integration. This Agreement and the other Loan Documents constitute the sole agreement of the parties with respect to the subject matter hereof and thereof and supersede all oral negotiations and prior writings with respect to the subject matter hereof and thereof.**[28]
> >
> > [28] Amended, Restated and Consolidating Loan Agreement, Exhibit 1–D of the answer in

> opposition to the petition to open, § 9.10 (emphasis supplied). Also, USDA Form 4279–14 titled Unconditional Guarantee, states that Pearlstein, "Guarantor," "may not use an oral statement to contradict or alter the written terms of the Note of this Guarantee…." Exhibit 1–J to the answer in opposition to the petition to open.
>
> The [c]ourt also notes that under Pennsylvania law—
>
> > Once a writing is determined to be the parties' entire contract, the parole [sic] evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is … inadmissible to explain or vary the terms of the contract.[29]
>
> > [29] Youndt v. First Natl. Bank of Port Allegany, 686 A.2d 539, 546 (Pa. Super. 2005) (citing Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 436 (Pa. 2004)).
>
> In this case, parol evidence precluded Pearlstein as a matter of law from asserting the defense based on fraud-in-the-inducement; therefore, the allegations based on this defense did not state prima facie grounds for relief… .

Memorandum Opinion, 8/1/16, at 8–9.

On appeal, Pearlstein claims the Bank represented that it would "submit complete and accurate information to the USDA in support of its application" for guarantees. Pearlstein's Brief at 23. Pearlstein accuses the Bank of "knowingly and intentionally overstat[ing] the value of the Property to the USDA" and not correcting "its earlier misrepresentation." **Id.** Pearlstein also asserts that without the Bank's "representations and verifications as to the accuracy of the information provided to the USDA," he

"would have never agreed to the Amended Loan Agreement or the Guaranty" but would have terminated Empire's relationship with the Bank and sold the Property, as planned. *Id.* As for the trial court's parol evidence analysis, Pearlstein argues that, because he was not party to the Amended Loan Agreement, the Personal Guaranty was not fully integrated, and neither the Amended Loan Agreement nor the Personal Guaranty "'directly deal' with [the Bank's] obligations with respect to the application process for the USDA Guaranties, the parol evidence rule would not bar evidence of [the Bank's] misrepresentations." *Id.* at 26.

In response, Walnut argues that Pearlstein "failed to allege facts beyond mere conclusions," which "do not rise to the level of a *prima facie* claim for fraudulent inducement[.]" Walnut's Brief at 25, 26. Specifically, Walnut points out Pearlstein's failure to aver "what the actual statement attributable to the Bank is, who said it, when it was said or why it was false." *Id.* at 27. Similarly, Walnut challenges Pearlstein's averments regarding the Bank's intent to mislead, Pearlstein's reliance, and Pearlstein's injury, as mere conclusions unsupported by the record. *Id.* at 28–33. With regard to Pearlstein's averment of injury, Walnut notes that the Amended Loan Agreement actually reduced Pearlstein's overall liability by $12,300,000 and that Empire could have sold the Property at any time. *Id.* at 32. Moreover, Walnut asserts that the parole evidence rule precludes Pearlstein's

reliance on the Bank's purported misrepresentations to support his fraud-in-the-inducement claim.  Walnut's Brief at 33–39.  According to Walnut:

> the integration clause in the Amended Loan Agreement applies to the "parties" who are parties to the Loan Documents, rather than to parties that are only parties to the Amended Loan Agreement.  Since the 2011 [Personal] Guaranty is included in the definition of "Loan Documents," and because Pearlstein is a party to that agreement, the 2011 [Personal] Guaranty is a fully integrated document.

*Id.* at 35 (footnotes omitted).

Upon review, we discern no manifest abuse of the trial court's discretion in denying the Petition to Open.  *Century Surety Co.*, 140 A.3d at 53.  Pearlstein's averments of fraudulent inducement are vague, speculative, and conclusory.  Despite the documentation he supplied in support of the Petition to Open, Pearlstein does not provide facts regarding who made a material misrepresentation, what the material misrepresentation was, how the material misrepresentation induced Pearlstein to reasonably rely upon it, and how the material misrepresentation caused him harm.

The Bank represented that it would obtain a USDA guaranty, and it did.  The Bank's alleged failure to comply with certain requirements of the USDA guaranty does not support Pearlstein's claim of fraudulent inducement.  Moreover, Pearlstein could not have reasonably relied on the Bank's alleged misrepresentations for the various reasons discussed by Walnut:  Empire was obligated to obtain the USDA guaranty, not the Bank—

Amended Loan Agreement, 2/2/11, at ¶¶ 5, 5.16; Pearlstein's liability under the Personal Guaranty was not conditioned on the USDA guaranty—Personal Guaranty, 2/2/11, at ¶ 2; Pearlstein obtained an independent valuation of the Property before he executed the Personal Guaranty—Petition to Open, 5/16/16, at Exhibit Q; and, as guarantor, Pearlstein waived any "value" related defenses—USDA Form 4279-14, at ¶ 6. Walnut's Brief at 29–30.

Nor does the Petition to Open include facts establishing that the Bank's alleged misrepresentations caused him harm. In fact, the Personal Guaranty merely restated and reaffirmed Pearlstein's liability dating back to Empire's original obligations for loans in 2007, 2009, and 2010. Under the Amended and Restated Note, Pearlstein's overall liability was reduced by $12,300,000. Moreover, although Pearlstein speculates that he would have sold the Property at a higher price rather than execute the Personal Guaranty in 2011, he did not aver in the Petition to Open that the loss of value in the Property was caused by the Bank's alleged misrepresentations. Furthermore, nothing of record prevented Empire from selling the Property rather than continuing its relationship with the Bank.

Lastly, we find support in the record for the trial court's findings that the Personal Guaranty was a fully integrated agreement and that parol evidence of the Bank's alleged misrepresentations regarding the USDA guaranty is barred. The Amended Loan Agreement contains an integration clause which refers to the Amended Loan Agreement and the other Loan

Documents. Amended Loan Agreement at § 9.10. "Loan Documents" is defined in the Amended Loan Agreement as follows:

> [The] documents listed in Section 4.1 hereof, including without limitation this Agreement, the Note, the Mortgage, the Assignment, **and all agreements**, amendments, certificates, financing statements, schedules, reports, notices, and exhibits **now or hereafter executed or delivered in connection with any of the foregoing**, as may be in effective from time to time.

*Id.* at ¶ 1 (emphasis supplied). Because Pearlstein executed the Personal Guaranty in connection with the Amended Loan Agreement, it falls squarely within the definition of Loan Documents and, therefore, it also falls within the scope of the integration clause. Thus, the parol evidence rule bars Pearlstein from introducing extrinsic evidence of the Bank's alleged misrepresentations. Furthermore, even if we agree with Pearlstein's claim that the USDA application and forms are also Loan Documents, the integration clause and parol evidence rule preclude extrinsic evidence of the Bank's alleged misrepresentations regarding those documents. In sum, Pearlstein's fraudulent inducement defense does not warrant relief.

In his third issue, Pearlstein argues that a factual dispute exists as to whether Empire was in default and, therefore, a rule should have been issued and discovery allowed. Pearlstein's Brief at 28. According to Pearlstein, the Bank waived any defaults by remaining silent for five years during the life of the Amended Loan Agreement; therefore, he posits, Walnut is estopped from confessing judgment against him personally based on Empire's defaults. *Id.* at 29.

In its memorandum addressing Pearlstein's motion for reconsideration, the trial court relied on a non-waiver provision in the Personal Guaranty to dispose of Pearlstein's waiver/estoppel defense:

> In the complaint-in-confession-of-judgment, Walnut asserted that Empire had defaulted by breaching three financial covenants, and specifically the covenants identified as "Minimum Tangible Net Worth," "Current Ratio," and "Debt-to-Equity Ratio." In the subsequently-filed [Petition to Open], Pearlstein challenged Walnut's aforementioned averments by advancing two defenses: first, Empire had not violated the Current Ratio covenant at the time Walnut declared a default; and second, Walnut had failed on prior occasions to enforce the other two covenants and was therefore estopped from declaring a default thereunder.
>
> The [c]ourt shall address the second argument—namely, that Walnut is estopped from declaring a default. To this end, the [c]ourt turned to the allegations made by Pearlstein in his Petition to [O]pen. In that petition, Pearlstein had stated that Walnut was aware of the alleged "violations" of the financial covenants, yet—
>
>> despite being given many opportunities to raise any issues concerning these covenants, Walnut's predecessor remained silent at the time it ought to have spoken . . . and . . . took no action regarding these covenants for a period of five years.
>>
>> * * *
>>
>> By remaining silent when they should have spoken, Bank and Walnut waived their ability to assert a default based on such covenants . . . and Pearlstein can prove the meritorious defenses of waiver and estopped.
>
> After examining the afore-quoted allegations in Pearlstein's petition, the [c]ourt also turned to the language of the Personal Guaranty which Pearlstein executed on February 2, 2011.[33] That document stated as follows in pertinent part:

[t]he liability of the Guarantor hereunder [Pearlstein] is absolute and unconditional, and shall not be affected in any way be reason of (a) … the lack of prior enforcement of any rights against any person or persons … (c) any delay in enforcing or failure to enforce any such rights … or (d) any delay in making demand on the Guarantor for performance or payment of the Guarantor's obligations hereunder.[34]

[33] "The task of interpreting a contract is generally performed bty a court rather than by a jury. The goal of that task is … to ascertain the intent of the parties as manifested by the language of the written instrument." Humberston v. Chevron USA, Inc., 75 A.3d 504, 510 (Pa. Super. 2013).

[34] GUARANTY AND SURETYSHIP AGREEMENT, Exhibit 1-E to the answer in opposition to the petition to open judgment by confession, § 2.

This clear and unambiguous language left the [c]ourt with no doubt: Pearlstein, as personal guarantor of Empire, had agreed that his liability could not be washed away by the Bank's or Walnut's lack of prior enforcement of any of their rights, or by their delay in asserting such rights. Based on the clear language of the Personal Guaranty, this [c]ourt found that Walnut or its predecessor had not waived their right to hold Pearlstein liable as guarantor, and could not be estopped from confessing judgment against Pearlstein. Therefore, this [c]ourt found that Pearlstein had failed to state prima facie grounds for relief as to the Minimum Tangible Net Worth and Debt-to-Equity Ratio covenants, and for the reason this [c]ourt rejected Pearlstein's challenges. Since Pearlstein had failed to state prima facie grounds for relief under two of the three alleged financial defaults, this [c]ourt deemed it unnecessary to address whether Empire had breached the Current Ratio covenant at the time of default.

Memorandum Opinion, 8/1/16, at 9–10 (three internal footnotes and emphasis omitted).

Pearlstein rebuts the trial court's reliance on the non-waiver provision of the Personal Guaranty in one-paragraph:

> Instead of recognizing its error in failing to resolve the Petition pursuant to Pa. R.C.P. 2959, in its opinion on Pearlstein's motion for reconsideration, the trial court found that Pearlstein's defense related to waiver of the default provisions were precluded by the Guaranty's "non-waiver" provision. In reaching this conclusion, the trial court failed to recognize that, under Pennsylvania law, a non-waiver provision may itself be waived. *See Gough v. Halperin*, 159 A. 447, 448 (Pa. 1932); *McFarland v. Kittanning Ins. Co.*, 19 A. 796, 796–[7]97 (Pa. 1890); *Imperial Fire Ins. Co. of London v. Dunham*, 12 A. 668 (Pa. 1888). As [the Bank's] conduct waived the default provisions in the Amended Loan Agreement and the non-waiver provision in the [Personal] Guaranty and "the issue of waiver is a matter of fact to be shown by the evidence," it was improper for the trial court to deny the Petition before giving Pearlstein the opportunity to conduct discovery.

Pearlstein's Brief at 30 (footnote and some citations omitted).

Walnut replies that the Personal Guaranty "waiver provision is clear and unambiguous. Indeed, Pearlstein does not argue otherwise." Walnut's Brief at 42. According to Walnut, Pearlstein's obligation to repay the loans is irrespective of:

> "**any delay in enforcing or failure to enforce any such rights, even if such rights are thereby lost**, or … **any delay in making demand on the Guarantor for performance or payment of the Guarantor's obligations**." The Amended Loan Agreement similarly provides that "**no failure or delay on the part of the Bank in the exercise of any right, power, or remedy shall operate as a waiver thereof** …", and that "**no waiver of any one or more of the provisions hereof shall be effective unless set forth in writing and signed by the parties hereto.**"

*Id.* (quoting Personal Guaranty, 2/2/11, at ¶ 2; Amended Loan Agreement, 2/2/11, at ¶¶ 9.1, 9.11) (emphases in original; internal citations omitted)). Walnut submits that whether the Bank "remained silent as to Empire's insolvency or financial requirements is irrelevant to Pearlstein's obligations under the [Personal] Guaranty." *Id.* at 43. Because Pearlstein waived all claims, Walnut asserts, "the trial court correctly held that it did not need to address Pearlstein's defense that Empire was not in default of one of the financial covenants – the 'Current Ratio' covenant." *Id.* at 45.

Upon review, we discern no manifest abuse of the trial court's discretion in rejecting Pearlstein's third defense. We have explained that:

> [p]arties to a written contract may abandon, modify or change it either by words or conduct. While an abandonment or waiver is not ordinarily presumed in the absence of an express agreement, if the conduct of the opposite party has been such as to mislead one, to his prejudice, into an honest belief that such a waiver or abandonment was either intended or consented to, it will be presumed. Delay in pressing a claim may be evidence relevant to the issue of a claim's abandonment, but such delay does not give rise to a conclusive presumption.

*Barr v. Deiter*, 154 A.2d 290, 293 (Pa. Super. 1959) (internal citations omitted).

Here, the plain language of the Personal Guaranty and the Amended Loan Agreement indicate that Pearlstein unconditionally waived any objection to the Bank's delay in enforcing its rights with regard to Empire's default on the financial covenants. Personal Guaranty, 2/2/11, at ¶ 2; Amended Loan Agreement, 2/2/11, at ¶¶ 9.1, 9.11. Moreover, the Petition

to Open contains no averments justifying a conclusion that the Bank acted in such a way as to waive or abandon the non-waiver provision. **_Barr_**, 154 A.2d at 293. Consequently, we discern no basis on which to disturb the trial court's rejection of Pearlstein's estoppel/waiver defense.

In his fourth issue, Pearlstein challenges the denial of his final defense: The Bank, and Walnut as its successor, breached the USDA guaranty by misrepresenting the Property's value and Empire's financial weakness to the USDA. Pearlstein's Brief at 31. According to Pearlstein, he and Empire were parties to the USDA guaranty because the Bank applied for them on behalf of Empire and Pearlstein; therefore, the trial court erred in concluding that Pearlstein could not raise a breach-of-contract defense. **_Id._**

Walnut responds that Pearlstein lacks standing to assert a claim based on the USDA guaranty because any cause of action arising out of the USDA guaranty is between the Bank and the USDA; Pearlstein is not a third-party beneficiary under the USDA guaranty; the USDA guaranty was additional collateral for the Bank; Pearlstein was not harmed by any alleged breach of the USDA guaranty; and Pearlstein was the primary guarantor on the Notes. Walnut's Brief at 47–48.

The trial court's opinion mirrors Walnut's reasoning:

> Preliminarily, the [c]ourt notes that—
>
>> the petitioning party bears the burden of producing sufficient evidence to substantiate its alleged defenses … **The defenses raised must be valid ones**.[11]

- 19 -

> [11] Haggarty v. Fetner, 481 A.2d
> 641, 644 (Pa. Super. 1984)
> (emphasis supplied).

Next, the [c]ourt shall examine the Loan Note Guarantee—a document executed by the Bank—whereby the USDA specifically guaranteed a portion of the loan made by the Bank to Empire. This document states as follows:

> in consideration of the making of the subject loan by the above named Lender (the Bank), the United States Department of Agriculture ("USDA"), pursuant to the Consolidated Farm and Rural Development Act … does hereby agree that … it will pay …
>
> B.  The [Bank] …
>
>> 1. Any loss sustained by such Lender on the guaranteed portion … or
>>
>> 2. The guaranteed principal advanced to or assumed by [Empire] under said notes….[12]
>
> [12] Loan Note Guarantee, UNITED STATES DEPARTMENT OF AGRICULTURE— RURAL DEVELOPMENT, Exhibit 7 of plaintiff Walnut's answer to the petition to open the confessed judgment.

This clear language leaves no doubt:  the Loan Note Guarantee is a contract between USDA as guarantor of the loans, and the Bank as lender: nowhere in any of the documents related to this transaction could this [c]ourt find that Pearlstein was a party to such a contract.  Having established that Pearlstein was not a party to the Loan Note Guarantee, this court additionally notes that under Pennsylvania law—

> in a claim for breach of contract, the **plaintiff** must alleged that there was a contract, the defendant breached it, and plaintiff suffered damages from the breach.[13]

- 20 -

> [13] Discover Bank v. Stucka, 33 A.3d 82, 87 (Pa. Super. 2011) [(emphasis original).]
>
> In this case, Pearlstein may not remotely assert that he was a party to the Loan Note Guarantee agreement, let alone that he is a plaintiff entitled to assert thereunder a breach-of-contract claim. For this reason, it is Pearlstein who has no standing to assert that the Loan Note Guarantee was breached by the Bank. As a result, Pearlstein may not rely on this argument to invalidate the assignment from the Bank to Walnut. Pearlstein has failed to bear the burden of producing a sufficient, valid defense in . . . [this] challenge to the confessed judgment, and for this reason the . . . challenge is rejected.

Memorandum Opinion, 7/7/16, at 4–5 (original brackets and one footnote omitted).

Generally, a guarantor does not have standing to sue for breach of the contract to which he was not a party. **Accord Borough of Berwick v. Quandel Grp. Inc.**, 655 A.2d 606, 608 (Pa. Super. 1995) ("[A]lthough the borough signed the contract between the Authority and Buchart–Horn, it did so only as a guarantor. It appeared to us … that the borough was not a party to the contract."). "To be considered a third-party beneficiary in Pennsylvania it is necessary to show both parties to the contract had an intent to benefit the third party through the contract and did, in fact, explicitly indicate this intent in the contract." **Ira G. Steffy & Son, Inc. v. Citizens Bank of Pennsylvania**, 7 A.3d 278, 288 (Pa. Super. 2010).

In light of the law above, our review of the record supports the trial court's findings. Pearlstein was not a party to the USDA guaranty, nor a third-party beneficiary of it; he was a guarantor of Empire's financial

performance under the Amended Loan Agreement.  As such, Pearlstein lacks standing to assert a breach-of-contract claim against the Bank based on the USDA guaranty.  Consequently, we discern no abuse of the trial court's discretion in denying the Petition to Open based on Pearlstein's meritless defense.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/22/2017</u>